IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSHUA HAUSFELD

    v.                   :   Civil Action No. DKC 14-0142

LOVE FUNDING CORPORATION

## MEMORANDUM OPINION

Presently pending and ready for review in this wage and hour law dispute is the motion to dismiss or, in the alternative, motion to transfer venue, filed by Defendant Love Funding Corporation. (ECF No. 9). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied, and Defendant's alternative motion to transfer venue will also be denied.

## I. Background

Defendant is a mortgage banking company that offers funding programs for multifamily and affordable housing, healthcare facilities, and hospitals. It is incorporated under the laws of Virginia with its principal place of business in Washington, D.C. Plaintiff is a resident of Maryland. Plaintiff was hired to work in Defendant's Washington, D.C. office on March 27, 2006 as an Underwriter Analyst. In January 2010, Plaintiff was

promoted to the position of Loan Originator. As part of that promotion, the parties executed an employment agreement in April 2010 that stated, in part, that he was being provided office space in the Washington, D.C. office and would be reimbursed for business expenses. (ECF No. 9-3). Compensation was structured to provide Plaintiff a base salary plus commissions to be paid quarterly in arrears after the fees were received by Defendant upon closing of the loans Plaintiff originated. Under the terms of the contract, Defendant reserved the right to modify its compensation policy and Plaintiff functioned as an at-will employee whose employment could be terminated at any time with or without cause.

Plaintiff states that he was very successful in his position, earning sizeable commissions. By the beginning of May 2013, he had transferred several loans to Defendant's underwriting and closing departments with the expectation that they would close in the second, third, or fourth quarters of 2013, which would result in more commissions to Plaintiff. Plaintiff projected he would earn commissions totaling nearly $4,000,000 for 2013. According to Plaintiff, Defendant, knowing that a seven-figure payout would result as soon as Plaintiff's transactions closed, decided to terminate Plaintiff on May 6, 2013 to avoid paying those commissions. Since the time of termination, many of these loans have closed, but Defendant has

refused to pay commissions and deferred compensation totaling $2,098,506.

On December 13, 2013, Plaintiff filed a complaint in the Circuit Court for Montgomery County, Maryland, claiming that Defendant violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, breached its contract with Plaintiff, and sought a declaratory judgment that Plaintiff is entitled to commissions for work performed before Defendant terminated his employment. (ECF No. 5). On January 17, 2014, Defendant removed to this court, citing diversity jurisdiction, 28 U.S.C. § 1332. On January 24, 2014, Defendant moved to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. Rule 12(b)(2) or, in the alternative, to transfer venue to the United States District Court for the District of Columbia. (ECF No. 9). Plaintiff opposed the motion on February 10, 2014 (ECF No. 13), and Defendant replied on February 27, 2014 (ECF No. 14).

## II. Analysis

### A. Personal Jurisdiction

When a court's power to exercise personal jurisdiction is challenged by a motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v.*

*Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396. In determining whether the plaintiff has met its burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted).

"The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction." *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (*quoting Shaffer v. Heitner*, 433 U.S. 186, 204

(1977)).  General jurisdiction, by contrast, may be exercised where a defendant maintains "continuous and systematic" contact with the forum state.  *Helicopteros*, 466 U.S. at 415 (*quoting Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)).  Plaintiff does not argue that general jurisdiction exists over Defendant in this case.  (ECF No. 13-1, at 5 n.1).

### 1.  Maryland Long-Arm Statute

Where the defendant is a nonresident, a federal district court may exercise personal jurisdiction only if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process."  *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).  The Maryland Long–Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment.  *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (*citing Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)).  This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause."  *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (*quoting Joseph M.*

5

*Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n.2 (D.Md. 1995)); *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006) (although the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause," it is not "permissible to dispense with analysis under the long-arm statute"). To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion. *See Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md. 2001); *Johansson*, 304 F.Supp.2d at 704 n.1.

The Maryland Long-Arm Statute provides, in relevant part:

> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
>
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>>
>> (4) Causes tortious injury in the State or outside the State if he regularly does or solicits business, engages in any other persistent course of conduct

6

> in the State or derives substantial
> revenue from goods, food, services, or
> manufactured products used or consumed
> in the State;

Md. Code Ann., Cts. & Jud. Proc. § 6-103.

In his complaint, Plaintiff contends that jurisdiction is proper under either subsection (b)(1), (b)(2), or (b)(4). He argues that jurisdiction exists under (b)(1) and (b)(2) by virtue of Defendant's employment relationship with Plaintiff. Defendant entered into an employment relationship with Plaintiff, a Maryland resident; it deposited Plaintiff's salary into Plaintiff's bank account in Maryland and withheld Maryland state and local taxes from Plaintiff's salary. In a declaration submitted by Plaintiff, he further elaborates on Defendant's contacts with Maryland. He states that Mr. Mark Dellonte, the President of Love Funding, and Mr. Jonathan Camps, a Love Funding senior manager, instructed him that to be successful as a Loan Originator, he would "have to go outside of the office in Love Funding's Washington, D.C. location to market and generate clients." (ECF No. 13-8 ¶ 5). Defendant allowed Plaintiff to work from his home office in Maryland and instructed him to be present at various work sites in Maryland. For example, Plaintiff is seeking the commission on the transaction for Airpark Apartments in Gaithersburg, Maryland, a loan he alleges that he originated. As with almost all transactions Plaintiff

worked on, he conducted due diligence at the borrower's premises in Maryland, including meetings with the borrower and site visits to the property. Defendant also required Plaintiff to attend conferences and conventions as part of his employment. These events occurred in Maryland. Finally, Plaintiff obtained Defendant's permission to organize marketing campaigns targeted at Maryland, which generated the Airpark Apartments transaction. (ECF No. 13-8 ¶¶ 5, 6, 8, 10, and 11). He also provides documents illustrating that Defendant closed on multiple loans for properties located in Maryland during Plaintiff's employment (ECF Nos. 13-2, 13-3, and 13-7), although Plaintiff does not allege he worked on any of these loans that he is seeking commissions for with the exception of Airpark Apartments.

Defendant responds by first arguing that a mere employment relationship is not sufficient to support personal jurisdiction. Furthermore, subsection (a) of Maryland's Long-Arm Statute only extends jurisdiction to claims that arise out of Defendant's contacts with the State. In regard to subsection (b)(1), Defendant points to the fact that a loan originator only receives a commission if the loan eventually closes. According to Defendant, in Plaintiff's seven years of employment, he did not close a single loan for a borrower located in Maryland as indicated by his company biography. (ECF No. 14-3). Any other activities Plaintiff allegedly conducted on behalf of Defendant

are irrelevant to invoke jurisdiction in Maryland because they did not form the basis of Plaintiff's claims that he was denied commissions for loans he originated. In terms of Plaintiff's allegations concerning Airpark Apartments and his Maryland-specific marketing campaign, Defendant, in its reply, contends that these allegations are being made for the first time in Plaintiff's opposition and, in any event, they are both false. Defendant provides declarations by Mr. Dellonte and Mr. Artin Anvar, a Senior Director of Loan Originations. Mr. Dellonte states that Plaintiff never proposed a Maryland-specific campaign. What was proposed jointly by Mr. Anvar and Plaintiff was a nationwide campaign targeting twenty-five states, of which Maryland was one. (ECF No. 14-1 ¶¶ 5-7; ECF No. 14-6 ¶¶ 6-10, Anvar Decl.). In regard to the Airpark Apartments transaction, Mr. Dellonte and Mr. Anvar both state that it was Mr. Anvar – not Plaintiff – who originated and closed the transaction. Defendant points to the fact that the Engagement Letter was sent by and signed by Mr. Anvar, and when the transaction was closed, Defendant's press release celebrating the deal recognized Mr. Anvar's work, with no mention of Plaintiff. (ECF Nos. 14-2). Mr. Anvar states that he set up the initial call to the client and set up site visits, with Plaintiff attending one meeting with Mr. Anvar at the Airpark Apartments site in Maryland. (ECF No. 14-6 ¶¶ 11 and 14). Defendant points to the timeline of the

Airpark Apartments deal as further evidence of Plaintiff's non-involvement. The Engagement Letter was sent March 11, 2013, signed on March 18, 2013, and countersigned on March 26, 2013. (ECF Nos. 14-7 and 14-8). Mr. Dellonte stated that a majority of work on a loan deal occurs after the Project Capital Needs Assessment is received from the Department of Housing and Urban Development. That report for the Airpark Apartments was received on May 21, 2013. (ECF No. 14-1 ¶ 11). Plaintiff's employment was terminated on May 6, 2013, but a significant amount of work to close the deal was done by Mr. Anvar throughout all of 2013 and up to the closing on January 27, 2014. (ECF No. 14-6 ¶ 15). Furthermore, Mr. Dellonte states that Plaintiff was never required to work in Maryland or perform any duties in Maryland. Plaintiff was never trained or instructed to spend minimal time in the office, conducted almost all of his work from his Washington, D.C. office, and never had a work from home arrangement. (ECF No. 14-1 ¶¶ 27-29). In regard to Plaintiff's travel to events in Maryland, Defendant never required Plaintiff to attend a conference or convention, although attendance could be a part of an employee's specific marketing plan. (*Id.* ¶ 31).

Transacting business pursuant to section (b)(1) of the long-arm statute "requires 'actions [that] culminate in purposeful activity within the State.'" *Bahn v. Chi. Motor Club*

*Ins. Co.*, 98 Md.App. 559, 568 (1993); *Sleph v. Radtke*, 76 Md.App. 418, 427 (1988). Section (b)(1), however, does not require the defendant to have been physically present in Maryland in order to have "transacted business" within the meaning of the statute. *Sleph*, 76 Md.App. at 427 (internal quotation marks omitted). In addition, the location of any contract formation leading to the transaction of business is irrelevant because "the statutory test [of transacting any business] may be satisfied by a showing of other purposeful acts performed by the [defendant] in this State in relation to the contract, albeit preliminary or subsequent to its execution." *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 356-57 (1967) (*quoting Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 (1965)). Finally, even a single contact with the forum can satisfy the transaction of business standard in subsection (b)(1). *Jason Pharm., Inc. v. Jianas Bros. Packaging Co.*, 94 Md.App. 425, 432 (1993).

Defendant does not dispute that it has some contact with Maryland: that much is clear from the loans it has closed in Maryland. The crux of Defendant's argument regarding subsection (b)(1) and (b)(2) is the limitation provided by subsection (a): whether Plaintiff's cause of action arises out of those contacts. Plaintiff is seeking commissions on loan transactions that he claims are due to him pursuant to his employment

11

contract and the MWPCL. Originated loans that did not close, and events attended that did not lead to closed transactions, are not relevant to the inquiry. Plaintiff points to the Airpark Apartments as a deal in Maryland that closed for which someone would normally receive a commission. Plaintiff alleges he worked on the deal. Defendant argues otherwise, stating that all the work was done by Mr. Anvar, although Mr. Anvar states that Plaintiff accompanied him to one meeting at the Airpark Apartments site. Maryland courts have long held that the long-arm statute confers jurisdiction as long as the claims asserted "bear some relationship to the acts in the forum state." *Malinow v. Eberly*, 322 F.Supp. 594, 599 (D.Md. 1971).[1] In fact, as long as "there is a showing of *some* purposeful acts performed by the defendant in Maryland in relation to . . . the cause[s] of action," courts may conclude that the causes of action arose from the acts enumerated in the long-arm statute. *Id.* (emphasis added); *see also Snyder*, 521 F.Supp. at 145–46. Thus, subsection (a) "merely prevents the assertion of claims in the forum state that do not bear some relationship to the acts in

---

[1] In *Malinow*, the court analyzed the precursor to subsection (a) of the Maryland Long-Arm Statute, but these sections have since been construed as "identical," thereby rendering the reasoning of *Malinow* instructive in interpreting the present subsection (a). *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 145–46 (D.Md. 1981).

the forum state relied upon to confer jurisdiction." *Malinow*, 322 F.Supp. at 599.

As discussed above, where no evidentiary hearing is held, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396. In determining whether the plaintiff has met this burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction. *New Wellington Fin. Corp.*, 416 F.3d at 294 (internal quotation marks omitted). That burden has been satisfied here. It is clear that Defendant has some contacts with Maryland. One of those contacts is the Airpark Apartments transaction, for which Plaintiff seeks commissions. While the parties dispute whether Plaintiff participated in this transaction, viewing all allegations in the light most favorable to Plaintiff, he has alleged that some relationship exists between his claims and the acts in the forum state necessary to satisfy the Maryland Long-Arm Statute.

## 2. Due Process

The inquiry does not end with the long-arm statute, however, as the court must also consider whether the exercise of jurisdiction over Defendant would violate the Due Process Clause of the Fourteenth Amendment. In this step, the question is whether the defendant purposefully established "minimum

contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Put differently, the court must consider whether Defendant's contacts with Maryland are substantial enough that it "should reasonably anticipate being haled into court []here." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The United States Court of Appeals for the Fourth Circuit has distilled these somewhat abstract concepts into three basic prongs: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan,* 293 F.3d at 712.

As to the first prong, Plaintiff has presented several facts supporting a finding that Defendant purposefully availed itself of the privilege of conducting business in Maryland. The Fourth Circuit has articulated a list of non-exclusive factors to consider when evaluating whether a defendant has engaged in purposeful availment of the forum state in the business context,[2]

---

[2] Those factors are as follows:

and several of these factors weigh in favor of such a finding here.  Plaintiff's complaint, and the accompanying exhibits to the pending motion, demonstrate that Defendant has closed numerous loan transactions occurring in Maryland.  Plaintiff worked on numerous loan prospects in Maryland that were intended to lead to closing, though they did not.  Employees regularly attend conferences and events in Maryland.  Plaintiff alleges that Defendant told him that a successful Loan Originator frequently would be out of the office in the field, which would include Maryland.

Defendant argues that its business in Maryland is not significant or long-term.  Mr. Dellonte states that Defendant did not conduct any business with a Maryland borrower for three

> [W]hether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; whether the performance of the contractual duties was to occur within the forum.

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted).

years of Plaintiff's employment: 2006, 2007, and 2009. And in the last seven years, only 2.46 percent of all deals closed by Defendant were closed in Maryland; only 5.34 percent of Defendant's total volume came from loans closed in Maryland; and only 3.56 percent of Defendant's total revenue came from Maryland. Defendant cites no case law to support its position and the cases cited by Plaintiff demonstrate the opposite: it is not the amount of income from Maryland – either in raw terms or relative to other states – that is relevant to whether Defendant availed itself of Maryland. Rather, relevant are the extent of Defendant's contacts with Maryland, which would include not only successful loans, but also work on loans that did not go all the way to closing, and any other efforts made to solicit business. *See, e.g., Int'l Shoe*, 326 U.S. at 319 ("Whether due process is satisfied must depend rather upon the *quality and nature* of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (emphasis added)); *English & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990) ("The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process."); *Maxtena, Inc. v. Marks*, No. DKC 11-0945, 2012 WL 113386, at *10 (D.Md. Jan. 12, 2012) ("Marks's motion to dismiss for lack of personal jurisdiction

misses the mark by focusing on the states in which his contacts with Maxtena predominate, rather than on whether he has sufficient contacts with Maryland such that the court's exercise of personal jurisdiction over him would not offend due process."); *Presbyterian Univ. Hosp. v. Wilson*, 99 Md.App. 305, 322-23 (1994) ("in determining whether a court should exercise personal jurisdiction over a non-resident defendant, the inquiry should be directed towards determining the extent of the contacts within the state, not the success thereof solely as it relates to the entire revenue picture."). Evidence so far demonstrates that Defendant closed twenty-two (22) loans in Maryland since October 2001, eight of which closed while Plaintiff was a loan originator, totaling over $100 million. (ECF No. 13-2, at 12-13). Two of the top five loan closings in terms of amount occurred in Maryland. (ECF No. 13-7, at 2). Plaintiff also recounts that he worked on five loan prospects located in Maryland. (ECF No. 13-8 ¶ 12). Additionally, multiple press releases issued by Defendant tout its employees' attendance at various meetings and conventions in Maryland (ECF Nos. 13-4 and 13-6), and the marketing campaign Plaintiff was involved with included Maryland. While Plaintiff does not dispute Defendant's assertions that it maintains no offices and owns no property in Maryland, and their employment contract does not provide that Maryland law would govern disputes, Plaintiff

has demonstrated that Defendant has purposefully availed itself of the privilege of conducting business in Maryland.

Defendant's citation to Judge Motz's opinion in *Waldron v. Atradius Collections, Inc.*, No. 1:10-cv-551, 2010 WL 2367392 (D.Md. June 9, 2010), is unavailing. That case involved an employee seeking severance pay pursuant to the MWPCL and his employment contract. Defendant moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue. The plaintiff was a Maryland resident who entered into an employment contract with a company located in Illinois. Plaintiff's place of employment was specified as Illinois; he was not permitted to telecommute from Maryland, but plaintiff never permanently relocated to Illinois. Plaintiff in *Waldron* was expected to perform some of his duties in Maryland, however. Plaintiff in *Waldron* was terminated for allegedly engaging in unprofessional behavior of a sexual nature toward multiple employees in the Illinois office. In determining whether defendant had purposefully established sufficient minimum contacts in Maryland, Judge Motz pointed to the following relevant facts: (1) the formal offer of employment was sent to plaintiff at his Maryland residence; (2) the offer letter was written on a sister company's letterhead with a Maryland return address; (3) plaintiff resided in Maryland throughout his employment; (4) defendant paid Maryland taxes and unemployment

insurance during plaintiff's employment; (5) the formal offer of
employment noted that plaintiff was required to work in
Baltimore at least once per month; (6) the vast majority of
plaintiff's work was done in Illinois; and (7) the factual basis
of the instant action relates to plaintiff's performance under
the employment contract while in Illinois. *Id.* at *2-3. Judge
Motz found the constitutional question of personal jurisdiction
to be a close one and elected to take a narrower ground of
decision and transfer the case, but suggested that if forced to
decide, he would find personal jurisdiction lacking. He pointed
to the fact that most of the contacts to Maryland were
plaintiff's contacts, not defendant's. Furthermore, the dispute
as to whether defendant breached the employment agreement was
substantively connected to alleged incidents in Illinois, and
bore only an incidental relationship to defendant's contacts
with Maryland. *Id.* at *3.

In this case, by contrast, many contacts with Maryland are
Defendant's contacts, including the numerous loans it has either
closed or sought to close, its marketing campaign in Maryland,
and its employees' attendance at events in Maryland.
Additionally, the questions as to whether Defendant violated the
MWPCL and breached Plaintiff's employment contract comes, at
least in part, from alleged activity in Maryland, namely the

Airpark Apartments transaction. Consequently, *Waldron* does not support Defendant's position.

"The second prong of the test for specific jurisdiction - that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79. As previously explained in the context of the long-arm statute, this requirement is also arguably met in the present case. Plaintiff seeks commissions for loans he generated that proceeded all the way through to closing. One of those loans was for Airpark Apartments, a loan that occurred in Maryland.

An exercise of jurisdiction by this court would also be "constitutionally reasonable," satisfying the third prong of the test. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009). "Generally, such an analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Id.* (internal quotation marks omitted). Several considerations are relevant here, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining

efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279.

Plaintiff's sole argument on this prong is that specific jurisdiction would not be constitutionally reasonable because it has not availed itself of the privilege of conducting business in Maryland, and does not have sufficient minimum contacts with Maryland. (ECF No. 9-1, at 16). This is essentially the first prong redux and, for the reasons discussed above, is unpersuasive. On the whole, the five considerations listed above counsel in favor of finding that Defendant is subject to personal jurisdiction in Maryland. The burden of litigating in this forum is not great: the parties and potential witness are located in close proximity to this courthouse. Indeed, as will be discussed below, Defendant seeks to transfer venue to the District Court in the District of Columbia, less than fifteen miles away. Maryland also has an interest in the resolution of grievances involving transactions that took place in Maryland. Plaintiff has a significant interest in litigating this dispute in the forum where he lives and has done at least some of the work at issue in Maryland. No general "interest of the states" seem particularly relevant here, and Defendant has not identified any in the memoranda it has submitted to the court. Consequently, Plaintiff has set forth facts regarding contacts

demonstrating that it would not offend due process to subject Defendant to personal jurisdiction in Maryland, thereby making a *prima facie* case for personal jurisdiction in Maryland. Defendant's motion to dismiss for lack of personal jurisdiction will be denied.

## B. Transfer Venue

Defendant argues that if the court finds that it has personal jurisdiction over Defendant, this case should be transferred to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), which provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the plain language of the statute suggests, the threshold inquiry in the analysis of a Section 1404(a) motion is whether the action could have been brought in the alternative forum. Once that is established, courts generally consider four factors: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002).[3]

---

[3] It is undisputed that venue would be proper in the District of Columbia. The general venue provision provides that

The moving party bears the burden of showing that transfer to another forum is proper. "In order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship [it] 'would suffer if the case were heard in the plaintiff's chosen forum.'" *CoStar Realty Info., Inc. v. Meissner*, 604 F.Supp.2d 757, 770 (D.Md. 2009) (*quoting Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002)). "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion . . . to transfer pursuant to § 1404(a)." *CoStar*, 604 F.Supp.2d at 770 (*citing Dow*, 232 F.Supp.2d at 499; *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F.Supp.2d 710, 712 (D.Md. 2002)). Unless the balance of the factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). Ultimately, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D.Md. 2008) (*citing Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991)).

Where a plaintiff sues in her home forum, her choice of venue is "ordinarily accorded considerable weight." *Lynch,* 237

a civil action may be brought in a judicial district in which any defendant resides. 28 U.S.C. § 1391(b)(1). Defendant is a corporate resident of the District of Columbia.

F.Supp.2d at 617. "[T]hat weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy," *id.*, but that is clearly not the case here. Plaintiff lives in Maryland and at least some of the events in question occurred in Maryland. Defendant argues that the first factor – Plaintiff's choice of forum – should be given very little weight because Plaintiff is engaging in forum shopping. It points to the fact that when Plaintiff's prior counsel first contacted Defendant in regard to these commissions, she invoked the D.C. wage law as the basis of a legal claim if informal resolution was not successful. Only when Defendant represented that Plaintiff was not covered by that law because he was a professional employee, did Plaintiff reassess his legal options and discover that the MWPCL, with no express exception for professional employees, was more favorable to him, and brought suit in Montgomery County Circuit Court.

Defendant's argument will be rejected. While courts have held that a plaintiff's choice of forum should be given little deference when it appears that forum shopping has occurred, *see, e.g., Easyweb Innovations, LLC v. Facebook, Inc.*, 888 F.Supp.2d 342, 349 (E.D.N.Y. 2012), the cases Defendant cites in support of its position concern circumstances where nexus with Plaintiff's original forum was lacking. *See Clayton v. Warlick*,

232 F.2d 699, 700-701 (4th Cir. 1956); *Polaroid Corp. v. Casselman*, 213 F.Supp. 379, 383 (S.D.N.Y. 1962); *Torres v. S.S. Rosario*, 125 F.Supp. 496, 497 (S.D.N.Y. 1954). That is not the case here. Plaintiff lives in Maryland and some of the events at issue occurred in Maryland. Furthermore, to the extent that Defendant does not believe Plaintiff has a viable claim under the MWPCL, and instead his claim is more appropriately brought under the D.C. wage law, transfer to the D.C. District Court will not alter the composition of Plaintiff's claim; it will merely change which federal courtroom adjudicates this allegedly deficient claim. Defendant's dissatisfaction is more with Plaintiff's choice of legal theory rather than his choice of forum. Plaintiff's choice of forum is entitled to respect.

Defendant acknowledges that the second and third factors are neutral, as distance between the federal courthouses in Washington, D.C. and Greenbelt is less than fifteen miles, making neither court appreciably more convenient to either the parties or witnesses. *See Jones v. Koons Auto., Inc.*, 752 F.Supp.2d 670, 681 n.8 (D.Md. 2010) ("The difference in driving distances (which amounts to less than 25 miles) between the courthouses . . . does not amount to a material difference in the convenience of the witnesses." (citation omitted)).

Finally, as to the fourth factor, the Supreme Court of the United States has recently reiterated that these public interest

factors "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S.Ct. 568, 581 n.6 (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also Lynch*, 237 F.Supp.2d at 618 (this category includes "the court's familiarity with applicable law."). Defendant argues that D.C. law should apply in this case because the employers and employees were located in D.C., the wages earned were earned in D.C., and the allegedly wrongful acts occurred in D.C. To a certain extent, Defendant's argument has merit. Plaintiff's second claim is for breach of contract. Maryland follows *lex loci contractus*, applying the law of the jurisdiction where the last act necessary to form a contract was made. *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988). The parties do not dispute that the employment contract at issue here was made in D.C.; therefore the law of D.C. would apply. This favors transfer to D.C. Plaintiff's first claim, however, arises out of the MWPCL, a Maryland statute. Defendant's belief that Plaintiff's claim can only be brought under D.C.'s analogous wage law, is an argument more appropriate for a motion to dismiss for failure to state a claim, not an argument that

this court is less familiar with the supposedly applicable D.C. statute. *See Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *8 n.30 (the "interest of justice" factor "does not include the merits of the plaintiff's claims"). Therefore, the final factor is neutral at best. Accordingly, Defendant has not carried its burden and the motion to transfer will be denied.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
